## Commonwealth *versus* The Ocean Oil Company.

1. An oil company was incorporated with a capital of $1,000,000, which was invested in oil land. Their dividends were only from the products of oil wells, and were credited to the capital stock invested. The company claimed that they were not liable to tax on net income, until the proceeds from oil had repaid all the capital. *Held*, that the income from their works after deducting expenses was the net income to be taxed.

2. Capital stock paid into a corporation authorized to transact business, and divided into shares, is presumed to remain until its dissolution.

3. The net income of a corporation is liable to taxation, whether declared in dividends or not.

May 18th 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Dauphin county :* Of May Term 1868, No. 64.

This case originated in the court below from an appeal by the defendant, The Ocean Oil Company, from the settlement of the Auditor-General and State Treasurer, made April 4th 1867.

The company made a return of $311,954.14, as their net earnings or income for the year ending November 1st 1866, on which they were taxed at the rate of 3 per cent., making $9358.74. They appealed from this settlement, alleging that no net earnings had been realized during that year, and that the return had been made by mistake.

On the trial, before Pearson, P. J., the Commonwealth having given in evidence the company's return; the defendants called David Boyd, who testified :

"On November 13th 1866, I was elected treasurer, and got the late treasurer to make the report. He did so, and I signed it; but discovered soon after that it was entirely incorrect. I wished to get it back but could not, and then appealed. I examined and found we had made no profits. We have since made two years' reports, and they were accepted. The amount paid in this case was $1,000,000. We declare dividends of oil, which are only a return of the investment to those who advanced. We have returned to shareholders some $600,000 or more, but our books will not balance till $1,000,000 is paid in. No net earnings are made. We pay a tax on our capital stock—$15,000 last year, $10,000 this year. The first well flowed some three hundred barrels per day, next one pumped seventy-five barrels per day. Flowing wells do not last over four or five months; pumping wells six months, generally.

"Paid $1,000,000 in stock for the land, and the holders realized over a million. The company actually paid a million. Some stock sold at $4, some $20 per share; original shares sold low—land had not been developed then."

Judge Pearson charged the jury :—

"If the oil were, practically speaking, inexhaustible, the product, after deducting expenses, would be net profits; but if you are satisfied that all of the oil will soon be extracted from this land, then the company divides not its net profits alone, but its capital. * * *

"In assessing the actual profits in business of the character under consideration, we must look to probabilities, as demonstrated by experience. If you are satisfied from the evidence that this company is consuming and dividing its capital, which may soon be gone entirely, then all of the dividends declared are not net profits. If the oil will last for a few years to come the capital will be refunded to the stockholders, after which all that is made above expenses will be net income. But should the Common-

wealth be obliged to wait for its taxes until that occurs?   We think not, but that a jury should act on *reasonable* probabilities, as every man would do in assessing the value of this property as oil territory, taking into account the time that it will probably take to exhaust the capital and the profits which will be made in the mean time, you can then consider whether the whole sum returned was net earnings or income, or whether the company should be charged with one-half, one-third, one-fourth, or with what other quantity thereof, and render your verdict for such sum, with interest thereon, after three months from the date of settlement."

The verdict was for the Commonwealth for $3205.35.

The Commonwealth took a writ of error, and in several specifications assigned the charge of the court for error.

*Brewster*, Attorney-General, for Commonwealth, plaintiff in error, referred to Act of April 30th 1864, § 2, Pamph. L. 218.

*J. C. Kunkel*, for defendants in error, cited Acts of April 29th 1844, § 33, Pamph. L. 497; April 12th 1859, § 1, Pamph. L. 529; April 12th 1867, Pamph. L. 73; April 1864, *supra*.

The opinion of the court was delivered, May 27th 1868, by

READ, J.—The capital of oil companies is generally nominal, and when therefore the capital of this company is called $1,000,000, it is very evident that this sum was not paid for the 4 acres of land, but that it was valued for the purposes of a division into stock at one million. "Some stock sold at $4, some $20 per share," says the treasurer, "original shares sold low— land had not been developed then."

This company calling and returning its capital at one million, is taxed upon its capital stock at that sum, but by the Act of the 30th April 1864, Pamph. L. 218, the "net earnings or income" of said corporation are subjected to a state tax of "three per centum upon such annual net earnings or income, in addition to the taxes now imposed by existing laws."

The question therefore is, what is the meaning of "net earnings or income?"   Does it mean, as it was construed by the treasurer in his report to the auditor-general, the product of the business after deducting expenses only? if so, then the settlement by the auditor-general and state treasurer is correct.

But it is contended by the company, that the annual product must first be applied to the repayment of capital, and this would leave no net earnings or income to tax.   The court below compromised between these two constructions, and held that there must be an application of so much of the annual product, as would repay the capital, in the probable number of years that oil would

.[Commonwealth *v.* Ocean Oil Co.]

flow or be taken from the land, and then the surplus would be the net earnings or income subject to taxation. This mode requires the interposition of a jury wherever there is a difference of opinion between the company and the state authorities.

I can see no warrant for such a reading of the law. The income from the works of the company after deducting all expenses, appears in this case by the testimony of the treasurer, to have been paid to the shareholders as dividends, and were no doubt advertised as such, thus enhancing largely the value of the stock in the market.

When a capital stock is created, and paid into a corporation, authorized to transact any business whether of banking, manufacturing or mining, and is divided into shares of a fixed amount, that capital is presumed to remain until its dissolution. The value of the stock and the shares into which it is divided, may rise or fall according to the success of the enterprise. In banks, for instance, the profits may be largely remunerative, or if unfortunate, the capital may be utterly lost. This is the theory of incorporated companies, the capital invested remains either really or nominally to their close.

The present company pays dividends which are of course its net earnings or income, and it is the net income, whether declared or not, the state intended to tax. This is the plain common sense meaning of the term, made familiar to every one since the formation of the internal revenue system. The theory of the company is, that the capital must be repaid to its shareholders, and then it has no capital left.

But if this company has paid $600,000, it must be different from all other such companies, if its shareholders have not been overpaid already. The court below were therefore in error in allowing a portion of the net earnings to be applied to the reduction of the capital stock.

Judgment reversed, and *venire de novo* awarded.