HARTRANFT *v.* MULLOWNY, JUDGE OF THE POLICE COURT OF THE DISTRICT OF COLUMBIA.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 19. Argued February 23, 1916; restored *to docket for reargument* November 13, 1916; reargued November 7, 8, 1917.—Decided June 3, 1918.

Under Jud. Code, § 250, judgments of the Court of Appeals of the District of Columbia in criminal cases, and judgments which are not final, are not reviewable by writ of error upon the ground that the jurisdiction of the trial court is in issue, or upon the ground that the construction of a law of the United States was brought in question by the defendant.

The jurisdiction of the Supreme Court of the District of Columbia to supervise the criminal proceedings of inferior tribunals by removal and review through certiorari, is analogous to that of the Court of King's Bench; and the nature and functions of the writ in such cases are to be tested by common-law principles.

At common law, when a cause before judgment was removed by certiorari in order that justice might be done by quashing the indictment or information or proceeding to trial, or otherwise, as the circumstances might require, the nature of the cause was not changed by the removal and a judgment quashing the writ was followed by a *procedendo* as a matter of course.

The Supreme Court of the District, having by certiorari removed for consideration a criminal case from the local police court upon a petition alleging want of jurisdiction and insufficiency of the information, afterwards entered judgment that the writ be quashed, the

petition dismissed, and the record "remanded" to the police court "whence it came." This judgment having been appealed to and affirmed by the Court of Appeals, *Held:* (1) That the judgment was in a case arising under the criminal laws; (2) that it was not final; and (3) that for these reasons a writ of error under Jud. Code, § 250, would not lie.

Writ of error to review 43 App. D. C. 44, dismissed.

THE case is stated in the opinion.

*Mr. Matthew E. O'Brien* and *Mr. Henry E. Davis,* with whom *Mr. Walter Jeffreys Carlin* was on the briefs, for plaintiff in error.

*Mr. Assistant Attorney General Frierson* for defendant in error.[1]

MR. JUSTICE PITNEY delivered the opinion of the court.

On April 17, 1914, an information in behalf of the United States was filed by the United States attorney in the police court of the District of Columbia against the plaintiff in error (who will be called the petitioner) charging violations of the Food and Drugs Act of June 30, 1906, c. 3915, 34 Stat. 768. Having first objected to the jurisdiction of the police court by motion to quash, by demurrer, and by special plea in bar, all of which were overruled by that court, petitioner was arraigned upon the information and pleaded not guilty, after which, and before trial on the merits, he filed in the supreme court of the District a petition praying that a writ of certiorari might issue from that court to the present defendant in error as judge of the police court to bring up the record and proceedings, upon the grounds (1) that the police court was without jurisdiction to try petitioner upon the infor-

[1] *Mr. Assistant Attorney General Underwood* argued the case for the defendant in error at the first hearing.

mation, for several reasons specified, and (2) that the information did not sufficiently inform petitioner of the nature and cause of the accusation against him, and his trial thereon would deprive him of his constitutional right in that behalf. The writ of certiorari was issued as prayed, return was made setting forth the information and a memorandum of the proceedings thereon, and afterwards a motion was made in the supreme court by the United States attorney, in the name of the respondent, to quash the writ because the police court had jurisdiction and had assumed jurisdiction of the cause of action involved in the information. Upon consideration the supreme court granted this motion, petitioner appealed to the court of appeals of the District, that court affirmed the judgment of the supreme court (43 App. D. C. 44), and to review the judgment of affirmance the present writ of error was sued out.

At the threshold we are confronted with the question whether we have jurisdiction to proceed under the latter writ. If we have, it must arise under § 250, Judicial Code (Act of March 3, 1911, c. 231, 36 Stat. 1087, 1159), which, so far as need be quoted, runs as follows: "Any final judgment or decree of the court of appeals of the District of Columbia may be reëxamined and affirmed, reversed or modified by the Supreme Court of the United States, upon writ of error or appeal in the following cases:" specifying, among others, "cases in which the jurisdiction of the trial court is in issue," and "cases in which the construction of any law of the United States is drawn in question by the defendant;" and then proceeding: "Except as provided in the next succeeding section, the judgments and decrees of said court of appeals shall be final in all cases arising under the patent laws, the copyright laws, the revenue laws, the criminal laws, and in admiralty cases." The succeeding section confers upon this court the discretionary power to review, by certiorari

or otherwise, judgments and decrees of the court of appeals otherwise made final by § 250.

Our jurisdiction is invoked upon the ground that the police court has not jurisdiction to try the information, and that the construction of the Food and Drugs Act, a law of the United States, is drawn in question by plaintiff in error, who was defendant below.  The motion to dismiss is based upon the twofold ground that the case is one arising under the criminal laws, and that the judgment of the court of appeals is not a final judgment within the meaning of the opening words of § 250.  If the case is one so arising, or if the judgment is not final, the fact that the jurisdiction of the police court, or the construction of a law of the United States, is in question, will not give us jurisdiction.  *Chott* v. *Ewing*, 237 U. S. 197, 201; see *McLish* v. *Roff*, 141 U. S. 661.  It is conceded by petitioner that the information in the police court presents a case arising under the criminal laws within the meaning of the section, and that this has not proceeded to final judgment; the response to the motion to dismiss being that the proceeding by certiorari in the supreme court of the District was a separate and independent proceeding, not arising under the criminal laws, and that this has been finally concluded by the affirmance in the court of appeals of the judgment of the supreme court, leaving nothing to be done except the issuing of execution for costs.

Whether it was a separate and independent proceeding must be determined by a consideration of the nature and office of the writ of certiorari, as employed in this case, and its relation to the criminal proceeding.

The only provision of the District of Columbia Code respecting this form of writ is in § 68 (Act of March 3, 1901, c. 854, 31 Stat. 1189, 1200), which provides: "The said supreme court may, in its appropriate special terms, issue writs of quo warranto, mandamus, prohibition, scire facias, certiorari, injunction, prohibitory and mandatory,

ne exeat, and all other writs known in common law and equity practice that may be necessary to the effective exercise of its jurisdiction." Act of March 3, 1901, c. 854, 31 Stat. 1189, 1200.

Certiorari always has been recognized in the District as an appropriate process for reviewing the proceedings of a subordinate tribunal when it has proceeded, or is proceeding, to judgment without lawful jurisdiction. *Kennedy* v. *Gorman*, 4 Cranch C. C. 347; Fed. Cas. No. 7702; *Bates* v. *District of Columbia*, 1 Mac A. 433, 449. And the power to employ the writ inheres in the supreme court of the District as possessing a general common law jurisdiction and supervisory control over inferior tribunals, analogous to that of the king's bench. *United States* v. *West*, 34 App. D. C. 12, 17. The court of appeals, in a recent case, declared: "There is no statute prescribing the function of, or regulating the procedure by, certiorari in the District of Columbia, hence we must look, therefor, to the common law. The writ lies to inferior courts and to special tribunals exercising judicial or quasi judicial functions, to bring their proceedings into the superior court, where they may be reviewed and quashed if it be made plainly to appear that such inferior court or special tribunal had no jurisdiction of the subject-matter, or had exceeded its jurisdiction, or had deprived a party of a right or imposed a burden upon him or his property, without due process of law." *Degge* v. *Hitchcock*, 35 App. D. C. 218, 226; affirmed 229 U. S. 162, 170.

At the common law certiorari was one of the prerogative or discretionary writs by which the court of king's bench exercised its supervisory authority over inferior tribunals, and it was employed in three classes of cases, among others, viz.: (1) to bring up an indictment or presentment before trial in order to pass upon its validity, to take cognizance of special matters bearing upon it, or to assure an impartial trial; if the accused was in cus-

tody, it was usual to employ a *habeas corpus* as a companion writ; (2) as a *quasi* writ of error to review judgments of inferior courts of civil or of criminal jurisdiction, especially those proceeding otherwise than according to the course of the common law and therefore not subject to review by the ordinary writ of error; and (3) as an auxiliary writ in aid of a writ of error, to bring up outbranches of the record or other matters omitted from the return.

The first of these functions is the one that now concerns us. Blackstone refers to it in these terms: "Thus much for process to bring in the offender after indictment found; during which stage of the prosecution it is, that writs of *certiorari facias* are usually had, though they may be had at any time before trial, to certify and remove the indictment, with all the proceedings thereon, from any inferior court of criminal jurisdiction into the court of king's bench; which is the sovereign ordinary court of justice in causes criminal. And this is frequently done for one of these four purposes; either, 1. To consider and determine the validity of appeals or indictments and the proceedings thereon; and to quash or confirm them as there is cause: or, 2. Where it is surmised that a partial or insufficient trial will probably be had in the court below, the indictment is removed, in order to have the prisoner or defendant tried at the bar of the court of king's bench, or before the justices of *nisi prius:* or, 3. It is so removed, in order to plead the king's pardon there: or, 4. To issue process of outlawry against the offender, in those counties or places where the process of the inferior judges will not reach him. Such writ of *certiorari,* when issued and delivered to the inferior court for removing any record or other proceeding, as well upon indictment as otherwise, supersedes the jurisdiction of such inferior court, and makes all subsequent proceedings therein entirely erroneous and illegal; unless the court of king's bench remands the record to

the court below, to be there tried and determined."
4 Black. Com. 320, 321. To the same effect is 2 Hale
P. C. 210, where the learned commentator further says:
"If there be an indictment to be removed and the party
be in custody, it is usual to have an *habeas corpus* to
remove the prisoner, and a *certiorari* to remove the
record, for as the *certiorari* alone removes not the body,
so the *habeas corpus* alone removes not the record itself,
but only the prisoner, with the cause of his commitment,"
etc. See also Fitz. Nat. Brev. 245; Bacon's Abr., tit.
Certiorari (A); *Harris* v. *Barber,* 129 U. S. 366, 369.[1]
    The function of the writ of certiorari, when thus issued
prior to judgment, being simply to remove the record and
proceedings into the superior court, to the end that
justice may there be done, by quashing the indictment
or information, by proceeding to trial upon it or other-
wise as the circumstances of the case may require, it is
obvious that it merely brings into play a supervisory
jurisdiction, without changing the nature of the case that
is to be heard and determined; that a decision by the

---

[1] The use of the writ of certiorari in conjunction with that of habeas
corpus has been a familiar part of the appellate procedure of this court
from an early period, under § 14 of the Judiciary Act of 1789, c. 20,
1 Stat. 73, 81; § 716, Rev. Stats.; § 262, Judicial Code; *Ex parte Bur-
ford,* 3 Cranch, 448; *Ex parte Bollman and Swartwout,* 4 Cranch, 75,
101; *Ex parte Yerger,* 8 Wall. 85, 103; *Ex parte Lange,* 18 Wall. 163,
166; *Hyde* v. *Shine,* 199 U. S. 62, 85. It is obvious that this use of the
certiorari is available before conviction, in a proper case.

An analogous use of the writ, before judgment in the court to which
it is addressed, arises under § 239 or § 251, Judicial Code (36 Stat.
1157, 1159), where, upon questions of law being certified to us in any
case pending in a Circuit Court of Appeals or in the Court of Appeals
of the District of Columbia, this court may require that the whole
record and cause be sent up to it, and thereupon decide the whole
matter in controversy as if it had been brought here by writ of error
or appeal. In such a case the record is brought here by writ of cer-
tiorari, with the effect of submitting the cause to this court for decision
instead of to the court of appeals.

reviewing court adverse to the accused upon any pre-
liminary matter, and without trial upon the merits,
followed by a remittitur to the court below, necessitates
further proceedings before that court from the point at
which they were interrupted by the allowance of the
writ; and that a judgment quashing the writ of certiorari
simply removes the obstacle that the writ interposed
in the way of further proceedings in the court of first
instance, so that a *procedendo* follows as a matter of course.
And so are the authorities. "If an indictment be removed
after issue joined and remanded, the inferior court shall
proceed as if no certiorari had been granted. . . . .
(It is true, that while it continues on the file, the court
cannot award a *procedendo*. But it may be taken off the
file, if it have issued *improvide;* and when that is done, a
*procedendo* will be granted.)" Bac. Abr., *tit.* Certiorari
(K), citing *Rex* v. *Wakefield,* 1 Burr. 485, 488; *Rex* v.
*Clace,* 4 Burr. 2456, 2459; *Rex* v. *Micklethwayte,* 4 Burr.
2522. And see Com. Dig., *tit.* Certiorari (G), citing
*Anonymous,* 1 Salk. 144, to the effect that if a certiorari be
granted to remove an indictment and the cause suggested
should afterwards appear false, a *procedendo* should be
awarded. See, also, *Kennedy* v. *Gorman,* 4 Cranch C. C.
347, 348; Fed. Cas. No. 7702.

The record in the present case shows that from begin-
ning to end it was recognized that the writ of certiorari
was a mere method of removing the information and the
proceedings thereon from the police court into the supreme
court, for purposes of review; that it was not a new or
independent cause, but a mere step in the pending
criminal case; so that when the supreme court reached the
conclusion that the writ ought be quashed, the result
was merely to remove this obstacle in the way of the
exercise by the police court of its jurisdiction, and that
the record ought to be remanded for further proceedings
in that court. The prayer of the petitioner was "that

the writ of certiorari may issue from this court to the respondent, commanding him to certify to this court the record and proceedings in the said cause so as aforesaid instituted and pending against the petitioner, *to the end that the same may be considered by this court,* and that there may be done *in behalf thereof* what of law and right ought to be done in the premises." The writ issued in pursuance of this petition and addressed to the judge of the police court, after reciting that there was "now pending before you a suit between the United States and the above-named petitioner, William A. Hartranft," commanded the judge to send to the supreme court "the record and proceedings in the said cause, *so that the said Supreme Court may act therein* as of right and according to the laws and customs of the United States should be done." And the judgment of the supreme court was that the writ of certiorari be quashed and the petition dismissed, and that the record be *"remanded to the Police Court of the District of Columbia whence it came."* Clearly, this was an implied mandate for further proceedings in the police court. The judgment for costs was but incidental.

The contention that the certiorari case in the supreme court was independent of the proceeding in the police court because the two cases bore different titles is without weight. The writ ran from the President of the United States to the judge by name, not in his personal but in his official capacity, as being in contemplation of law the custodian of the record (see *State* v. *Howell,* 24 N. J. L. 519; *Kirkpatrick* v. *Commissioners,* 42 N. J. L. 510; *Hutchinson* v. *Rowan,* 57 N. J. L. 530); but the substance of it was a command that the record of the cause pending in the police court be removed into the supreme court for its consideration; and the execution of the writ did not change the nature of the cause but merely transferred it to a different court.

There is a singular and fatal inconsistency between the

grounds on which plaintiff in error invokes our jurisdiction and the ground on which he endeavors to maintain it. He comes saying, in order to bring himself within § 250, Judicial Code, that in this case (a) the jurisdiction of the trial court is in issue, and (b) the construction of a law of the United States was drawn in question by himself as defendant. But, in resisting the objection that the case is one arising under the criminal laws and the judgment is not final, he is obliged to take refuge in the theory that the certiorari proceeding was separate and independent from the police court proceeding. This, if granted, would leave him without a footing here, because in the certiorari proceeding the supreme court was the "trial court," and its jurisdiction was not and is not in issue; and in that proceeding he was prosecutor or plaintiff, not defendant, and it does not appear that the construction of any law of the United States was there drawn in question by defendant in error, who was defendant if the proceeding was an independent one. There is no escape from the dilemma.

From what has been said it results that the decision of the supreme court was a decision in a case arising under the criminal laws; and, since it required further proceedings in the police court before the merits of the case could be determined, it was not a final judgment within the meaning of the opening words of § 250, Judicial Code. By § 226 of the District of Columbia Code, the court of appeals may review interlocutory orders of the supreme court, as well as final judgments; but it is unnecessary to say that if the judgment reviewed was interlocutory, so is the judgment affirming it. Were we to review and affirm the latter judgment, a trial upon the merits in the police court would still be necessary. The bearing of this is manifest. *Macfarland* v. *Brown*, 187 U. S. 239, 246.

Two cases very much in point are to be found in the reports of New Jersey; both being decisions of the court

of last resort. To show their pertinency, it should be premised that in that State the jurisdiction and practice of the supreme court are modeled after those of the king's bench, and there is a review of its decisions by the court of errors and appeals (as in the house of lords), but only after final judgment. The practice of employing the writ of certiorari for the removal of an indictment or presentment before trial from the court of first instance into the supreme court has been recognized from the beginning, and regulated by statutes not departing essentially from the common-law practice. Act of February 6, 1799, Paterson's Laws, p. 350; Rev. Stats. 1847, p. 983; Gen. Stats. 1895, p. 367; P. L. 1903, p. 343; 1 Comp. Stats. (1910), p. 402. Upon the removal of an indictment into the supreme court by this process, if that court determines that the indictment is not sufficient in law, the person indicted is discharged; but if it is found sufficient, the court may in its discretion retain it to be carried down for trial before the proper circuit court, or may order it returned to the court from which it was removed, there to be proceeded with in the same manner as if the writ had not been allowed. It is a common practice to use this writ in order to obtain the judgment of the supreme court upon the validity of an indictment, before trial. *Sailer* v. *State*, 16 N. J. L. 357; *State* v. *Powder Mfg. Co.*, 50 N. J. L. 75; *State* v. *New Jersey Jockey Club*, 52 N. J. L. 493; *State* v. *Nugent*, 77 N. J. L. 157; *State* v. *Kelsey*, 80 N. J. L. 641. Such being the practice, in *Parks* v. *State*, 62 N. J. L. 664, the return to a writ of error issued out of the court of errors and appeals to the supreme court disclosed that the latter court, by certiorari to the sessions, had removed an indictment and entertained and denied a motion to quash it, and ordered the record to be remitted to the sessions to be proceeded in according to law. A motion having been made to dismiss the writ of error, the court, speaking by

Chief Justice Magie, said: "When the Supreme Court, by virtue of its superintending power over inferior courts, brings, by certiorari, into it the proceedings of an inferior court upon an indictment, it has the option, at its discretion, to retain the cause and proceed to a final disposition of the issues presented, or to remit the proceedings to the inferior court. Gen. Stat. 368. Had the Supreme Court retained the cause now before us, it is obvious that no final judgment could have been reached until the accused had been convicted and sentenced or acquitted and discharged by that court. It is equally plain that, after the exercise of its option of remitting the proceedings to the sessions, no final judgment in the cause could have been reached until a similar result had been reached in that court. A *certiorari* in such cases is not the institution of a new suit, nor does it bring in question any final judgment. The result is that this writ was prematurely issued and must be dismissed." To the same effect is *State* v. *Kelsey*, 82 N. J. L. 542.

For both reasons, that the case is one arising under the criminal laws and that the judgment is not final, we have no jurisdiction under § 250, Judicial Code, and the writ of error must be and is

*Dismissed.*


Mr. Justice McReynolds took no part in the consideration or decision of this case.