MASCOT OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55997.   Promulgated December 27, 1933.

*J. Arthur Greenfield, Esq.*, for the petitioner.
*Elden McFarland, Esq.*, and *E. G. Sievers, Esq.*, for the respondent.

#### OPINION.

VAN FOSSAN: In this case, in which a deficiency of $2,228.88 for the year 1928 was determined, the question is whether in computing depletion petitioner is entitled to include as income from its oil property a bonus received for granting an exclusive right to drill and explore at depths below 1,600 feet to a sublessee, it appearing that there was production of oil from wells of less than 1,600 feet (drilled by petitioner) and no production from wells deeper than 1,600 feet (drilled by the sublessee), or, to state it differently: Did petitioner by the execution of a sublease granting an exclusive right to drill and explore to depths beyond 1,600 feet thereby create a new " property " in the land below 1,600 feet, which " property " must stand on its own production in computing depletion, thereby depriving petitioner of the right to include income from such new " property " in computing depletion under its original lease?

The parties stipulated the facts substantially as follows:

The petitioner is a corporation organized under the laws of the State of California, with principal place of business in the city of Los Angeles, State of California; its income tax return for the year 1928 was filed with the collector of internal revenue at Los Angeles, California.

This proceeding involves a deficiency of $2,228.88 proposed by respondent in the income tax liability of the petitioner for the calendar year 1928.

The petitioner concedes that $155.88 of the deficiency as proposed by respondent is correct. The only issue is whether the bonus of $60,000 received by petitioner should be included in gross income from the oil and gas properties in computing depletion allowable under section 114 (b) (3) of the Revenue Act of 1928.

Petitioner on November 23, 1901, acquired all of the lessee's right, title, and interest in and to an oil and gas lease dated August 10, 1901, and another one dated April 2, 1901. The leases were in the usual form, granting the lessee the exclusive right to drill and explore for oil, gas and other substances to a desired depth at fixed terms.

Thereafter petitioner developed this property, drilled a total of 54 oil wells, and extracted and sold the oil and gas therefrom, and during the calendar year 1928 received a gross income from the sale of gas and oil extracted therefrom (exclusive of the bonus hereafter referred to) in the amount of $125,593.75.

Petitioner on November 13, 1928, entered into an agreement of lease with the Standard Oil Co. of California. The sublease granted the exclusive right to drill and explore for oil, gas, and other hydrocarbons at a depth below 1,600 feet on certain fixed terms.

Petitioner received during 1928 the sum of $60,000 from the Standard Oil Co. of California as a bonus for entering into the agreement set forth above, and paid a commission of $15,000 to an agent for services rendered in the matter.

At the time of entering into this agreement and receipt of $60,000 bonus, petitioner was receiving income from the sale of oil and gas extracted from the property, and continued to do so for the balance of the year 1928, and is at the present time receiving income from said property, such oil and gas being produced from oil and gas sands by virtue of the leases of August 10 and April 2, 1901.

The Standard Oil Co. of California to date has been unsuccessful in completing a well under the terms of the agreement of November 13, 1928, nor has there been to the present time any production of oil under that agreement.

The expenses and deductions incurred by petitioner during 1928 as chargeable against the income from this oil and gas property (exclusive of the commission of $15,000) amounted to $58,067.25.

The depletion allowable for the year 1928, based on cost and March 1, 1913, value of the property, amounted to $21,280.40.

The depletion allowed by the respondent from this property in determining the deficiency involved herein amounted to $33,763.25.

If the Board holds that the bonus of $60,000 is properly included in gross income from the property, then the correct amount of depletion allowable from this property is the sum of $51,038.28.

We are not aware of any case involving the precise question here raised. The case of *Vinton Petroleum Co. of Texas*, 28 B.T.A. 549, cited by respondent, holding that depletion must be computed on the basis of separate properties (some owned and some leased) is clearly no authority for respondent's position here. The problem does not, however, seem to be especially difficult.

By the original leases petitioner was entitled to drill and explore to any depth. The exact method of such development was left to petitioner. It could drill at its expense, could hire the drilling on a cash or a percentage basis, or it could sublease and receive either cash or a percentage of production. We do not know exactly what method was pursued previous to 1928, but it is a fact that successful wells were brought in and depletion was allowed in connection therewith.

The successful wells were drilled to a depth of less than 1,600 feet. For whatever reason, petitioner chose to sublease the exclusive right to drill to a depth greater than 1,600 feet. For granting this privilege petitioner received a bonus of $60,000 and incurred certain expenses. Thus far the deeper drilling has been unsuccessful and unproductive.

There can be no question but that were the sublessee successful in obtaining oil below 1,600 feet petitioner would be obliged to account to its lessor and predecessors in title for the same as production from the property originally leased. The question thus arises whether there is a difference in defining the term "property" as used in section 114 of the Revenue Act of 1928, between the point of view of the lessor and that of the lessee of land below 1,600 feet. Though as to that property lying above 1,600 feet petitioner is lessee only, and as to that below 1,600 feet it is both lessee and lessor, its rights with respect to its original lessor are not abridged by the sublease. It seems to us we should gauge petitioner's rights by looking at the question of property from its position, not from that of the sublessee. So viewing the question, we are of the opinion that the term "property", as used in the sections of the revenue act relating to depletion in so far as respects petitioner in this case, relates to the property acquired by it under the original leases, and that whatever may be the rights of the sublessee as respects its interest in the land below 1,600 feet, petitioner is entitled to return as income any proceeds related to the drilling of the land whether above or below 1,600 feet. Specifically, we are of the opinion that the bonus paid by the sublessee for the exclusive privilege of drilling the land to the lower depths is income from the property granted to petitioner

by the leases to it, and since there is production from the depths of less than 1,600 feet it is immaterial that the deeper wells put down by the sublessee have been unproductive.

The effect of this holding is that all of the land both above and below the 1,600-foot level constitutes, as to the petitioner, one property. So to hold is not to hold that petitioner could not, for certain purposes, sever part of the land lying below 1,600 feet, nor is it to hold that the party acquiring the land below 1,600 feet would not have a "property." Consideration of these questions is not necessary to our decision.

The above conclusions find support in the opinion of the Supreme Court in *Palmer* v. *Bender*, 287 U.S. 551. In that case the learned justice observed:

* * * The language of the statute is broad enough to provide, at least, for every case in which the taxpayer has acquired, by investment, any interest in the oil in place, and secures, by any form of legal relationship, income derived from the extraction of the oil, to which he must look for a return of his capital.

That the allowance for depletion is not made dependent upon the particular legal form of the taxpayer's interest in the property to be depleted was recognized by this Court in *Lynch* v. *Alworth-Stephens Co.*, 267 U.S. 364. There a depletion allowance under § 12 (a) of the 1916 Act, 39 Stat. 767, was claimed by a lessee of a mining lease, in the computation of tax on income from the proceeds of ore mined. The statute made no specific reference to lessees and the Government argued that as the lessee acquired no ownership of the ore until the severance from the soil (see *United States* v. *Biwabik Mining Co.*, 247 U.S. 116, 123) the lease gave him no depletable interest in the ore in place. But this Court held that regardless of the technical ownership of the ore before severance, the taxpayer, by his lease, had acquired legal control of a valuable economic interest in the ore capable of realization as gross income by the exercise of his mining rights under the lease. Depletion was, therefore, allowed.

Similarly, the lessor's right to a depletion allowance does not depend upon his retention of ownership or any other particular form of legal interest in the mineral content of the land. It is enough if, by virtue of the leasing transaction, he has retained a right to share in the oil produced. If so he has an economic interest in the oil, in place, which is depleted by production. Thus, we have recently held that the lessor is entitled to a depletion allowance on bonus and royalties, although by the local law ownership of the minerals, in place, passed from the lessor upon the execution of the lease. See *Burnet* v. *Harmel, supra;* No. 104, *Bankers Pocahontas Coal Co.* v. *Burnet, ante* p. 308.

We are of the opinion that respondent was in error in refusing to allow petitioner to add the bonus to income from the property in computing depletion therefrom. The fact that there has been for many years production from the shallow wells is sufficient to bring petitioner within the requirements laid down by the Board in *Lizzie H. Glide*, 27 B.T.A. 1264.

Reviewed by the Board.

*Decision will be entered under Rule 50.*