INSPIRATION CONSOLIDATED COPPER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 8990, 20866.   Promulgated May 16, 1928.

*Lyle T. Alverson, Esq.*, for the petitioner.
*A. George Bouchard, Esq.*, for the respondent.

**OPINION.**

GREEN: We will discuss the issues in the order previously stated.

The first issue is decided adversely to the respondent. *Appeal of L. S. Ayers & Co.*, 1 B. T. A. 1135.

In connection with the second issue the petitioner objects to the respondent's refusal to include as a part of its invested capital a reserve for depletion in the sum of $5,856,644.21. This reserve represents the amount by which the petitioner's depletable properties had been depleted up to the beginning of the taxable year 1918 on the basis of cost. The petitioner argues that, "Depletion is in fact and in law not a return of capital but is merely true income part of which Congress in its wisdom has declined to tax" and cites in support thereof the cases of *Stratton's Independence* v. *Howbert*, 231 U. S. 399; *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103; *Goldfield Cons. Mines Co.* v. *Scott*, 247 U. S. 126; *Commonwealth* v. *Ocean Oil Co.*,

59 Pa. St. 61; *Commonwealth* v. *Penn. Gas & Oil Co.*, 62 Pa. 241; and *Ludey* v. *United States*, 61 Ct. Cls. 126. It then cites *Bowers* v. *Kerbaugh Empire Co.*, 271 U. S. 518, for the proposition that, "Income means the same thing under all of the Revenue Acts and under the 16th Amendment." From these premises the petitioner concludes that if depletion is income rather than a return of capital it must follow that it is a part of earned surplus and hence a part of invested capital. In the computation of invested capital the maximum amount to be included by reason of the ore body is its cost. In computing invested capital the asset may be carried at cost, in which event no consideration is given to the depletion reserve, or the asset account less depletion may be included, in which event the depletion reserve is also included. The result is the same.

The question of the inclusion in surplus of the difference between the book depletion based on cost and the depletion deduction based on the March 1, 1913, value is not involved here as that difference has already been included in surplus. See *Entress Brick Co.* v. *Commissioner*, 9 B. T. A. 588. It is not lightly to be assumed that Congress intended that the value of mineral ore should remain a part of invested capital after it has been mined and sold. The thing that had actually occurred is a substitution of assets, namely, cash or its equivalent for ore. This appears to be the view of the United States Supreme Court as expressed in *United States* v. *Ludey*, 274 U. S. 295, wherein the court said:

The proviso limiting the amount of the deduction for depletion to the amount of the capital invested shows that the deduction is to be regarded as a return of capital, not as a special bonus for enterprise and willingness to assume risks.

We conclude that the petitioner's contentions on this point should be denied. See *Cortez Oil Co.* v. *United States*, 64 Ct. Cls. 390.

The third issue, as far as the record goes, is whether the respondent erred in increasing the petitioner's inventory of copper on hand at December 31, 1918, from cost per books of $3,199,555.94 to an alleged market value of $5,569,143.40. In the computation set forth in the deficiency letter the respondent adds $2,369,587.46 to net income and captions the addition, "Increase in value of 1918 inventory," and then makes the explanation set out in the findings above. Nothing was alleged in the pleadings by either party from which it could be inferred that the reason for the above increase in income was the fact that the respondent had treated all shipments of concentrated ore to the smelter as sales. Notwithstanding the pleadings or the statements in the deficiency letter that such increase in income was due to an "Increase in value of 1918 inventory," the counsel for the

respondent during the course of the hearing made the following statement:

In view of the fact that you have the Commissioner's figures, I do not think Mr. Alverson's statement has clearly presented the issue, as I understand it to be, which is this: There is no doubt on the part of the Commissioner as to the cost of the copper ore, but as I understand the practice of the taxpayer, the taxpayer produced the copper ore, delivered the ore to the smelter, the smelter issued warrants or certificates, and there was returned to the taxpayer refined copper, and the Commissioner has treated that transaction as a sale, giving rise to taxable income. Apparently, from the proof so far, I take it Mr. Alverson is relying upon the basis of cost in determining his inventory as of December 31, 1918. We have computed income upon the theory that the transaction between the mining company and the smelter was the sale and gave rise to taxable income.

The respondent took no steps to amend the pleadings, and has filed no brief although two extensions of time were given him for that purpose. No evidence was offered by either party to show that the respondent had treated the shipments of ore to the smelter as sales or that they should be so treated. On the contrary all of the evidence is to the effect that the cost to the petitioner of producing the 27,845,717 pounds of copper on hand at December 31, 1918, was $3,199,555.94. The books of the petitioner were introduced in evidence and testimony given to the effect that no such sales were recorded therein. We do not say that the books would be conclusive as to a sale but we do say that the issue as to whether the petitioner has reported all of its sales is not before us and if it were there has been no evidence offered which would sustain such an allegation. If the theory of the respondent was that copper shipped to the smelter resulted in sales affecting income, there is no explanation for his refusal to allow depletion on the full number of pounds of ore mined during the year, which action gives rise to the fourth issue involved in this proceeding. If this view is taken, the elaborate statement in his deficiency letter quoted in the findings above concerning the fair market value of copper at *December 31, 1918*, is wholly irrelevant. The admission in his answer that "The number of pounds of *copper produced* during 1918 *by this taxpayer* was 98,540,041" is significant. And if such were the respondent's theory, why was there no mention of it whatever in the deficiency letter or why was it not set up by way of answer?

Whatever may be the facts or the theory on which the respondent actually relied, this proceeding must be decided on the record before us. The facts on this issue are few. The petitioner valued its closing inventory at December 31, 1918, according to its usual and consistent custom at actual cost of the copper contained therein, to wit, $3,199,555.94. The respondent increased such inventory to

$5,569,143.40, stating that to be the fair market value of the copper at that time.

In *Appeal of F. N. Johnson Co.*, 2 B. T. A. 256, the taxpayer had taken its inventories at market which in that case was *above* cost. In the course of the opinion we said:

It is manifest that the written-up amount in the respective inventories at the close of the years 1917, 1918 and 1919 must be eliminated from those inventories for the purpose of correctly determining the net income of the taxpayer.

In *Appeal of George C. Peterson Co.*, 1 B. T. A. 690, we said, "Inventories must be taken upon a consistent basis from year to year. *Appeal of Thomas Shoe Co.*, 1 B. T. A. 124."

In *United States* v. *Kemp* (C. C. A.), 12 Fed. (2d) 7, the taxpayer sought to justify the valuation of merchandise inventories at market value when such value was higher than cost. The court held:

From time to time the Treasury Department has adopted rules relative to inventories, all of them of about the same purport, in which it is provided that a taxpayer, in valuing his inventory, may adopt the basis of cost, or cost or market price, whichever is lower. See T. D. 2609, December 19, 1917; T. D. 2831, April 16, 1919; T. D. 2831, December 30, 1920. There is the testimony of several witnesses in the record tending to show that it is the custom of broom manufacturers in Texas to value their inventories at market price, and it is shown that the corporation here in interest had always done so. We think that what is the "best accounting practice," referred to in the statute, would have to be determined by a consideration of a much broader field than that covered by the witnesses for defendants, and, on the other hand, there is the testimony of a government accountant tending to show that the best accounting practice during the taxable years 1917, 1918, and 1920 was to value inventories at cost or market, whichever was lower. Notwithstanding this testimony, and regardless of the practice in other lines of business, it would seem to us that the best method of determining the profits of a manufacturing business would be to value the raw material at the cost.

In view of the provision of the statute which requires that the method of inventorying must be calculated to most clearly reflect the income, we think that the regulations promulgated by the Commissioner are reasonable and fair, and within his authority to make. The option given the taxpayer to value his inventory at cost or market price, whichever is lower, grants nothing to a manufacturer, but, as he has the right to value his inventory at cost, it takes nothing away from him. *He cannot, however, value his inventory at market price, if it is higher than cost.*

In the instant case the petitioner consistently took its inventory of copper on hand at the close of the year at actual cost. The respondent erred in increasing inventories to an amount in excess of cost as determined by the petitioner. It follows that the net income as determined by the respondent in his deficiency letter dated September 4, 1926, should be reduced by the amount of $2,369,587.46 representing "Increase in value of 1918 inventory."

Regarding the fourth issue the petitioner contends it is entitled to deduct depletion on the 98,540,041 pounds of copper produced during the taxable year rather than on the 70,694,324 pounds sold during the same period. The petitioner kept its books upon the accrual basis. In *Appeal of R. M. Waggoner*, 5 B. T. A. 1191, we said at page 1201:

> The tax is an annual tax and the deductions are annual deductions and it is the intent and purpose of the statute that income and deductions shall be treated consistently. *United States* v. *Anderson*, 269 U. S. 422; *United States* v. *Mitchell*, 271 U. S. 9; *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79; *Appeal of Henry Reubel*, 1 B. T. A. 676.

In the *Waggoner case* and in *National Oil & Gas Co.* v. *Commissioner*, 6 B. T. A. 399, we held that where the petitioners were on the cash receipts and disbursements basis depletion could be taken only upon the basis of the oil sold during the year, the proceeds of which were included as income; or in other words, the depletion was to be taken upon the same basis as the income was returned.

In *Appeal of Clearfield Lumber Co.*, 3 B. T. A. 1282, the taxpayer kept its books upon an accrual basis but contended that it was entitled to deduct depletion on production rather than on sales as contended by the Commissioner. In sustaining the Commissioner's action we said, *inter alia* (p. 1290):

> The real purpose to be accomplished is so to adjust the accounting that the depletion allowance shall include a return of the cost of capital assets plus the excess of March 1, 1913, value over cost, *and that that depletion allowance should be made available as a deduction only when the timber cut or the mineral extracted is sold.* This result is accomplished by the method pursued by the Commissioner in this case. We believe it is a practicable method and a comparatively simple one for accomplishing the end desired and more clearly reflects the income of the taxpayer than would a method in which the depletion allowance would be deducted in the year of cutting or extraction without further adjustment. (Italics supplied.)

In view of the foregoing it is our opinion that the respondent's action in only allowing depletion on the 70,694,324 pounds of copper sold during the year was correct and should be sustained.

The petitioner offered no evidence in connection with the fifth issue. The respondent's determination on that point will, therefore, remain undisturbed.

Issues 2, 4, and 5 are decided for the respondent; issues 1 and 3 for the petitioner. The deficiency should be recomputed accordingly.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*