MELVILLE W. THOMPSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 23609.    Promulgated February 17, 1930.

*Hugh Satterlee, Esq., Albert S. Lisenby, Esq.,* and *Edwin L. Gluck, C. P. A.,* for the petitioner.

*Brooks Fullerton, Esq.,* for the respondent.

1194

OPINION.

Marquette: The pleadings in this case raise five issues. One issue, which involves depletion of oil property, was withdrawn by the petitioner at the hearing and as to another issue the petitioner conceded it was in error, the adjustment it seeks in income having been made by the respondent in the deficiency letter. This leaves three issues for decision.

The respondent has determined that the books of the partnership of Thompson & Black were kept on the basis of cash receipts and disbursements, and he has computed the partnership income and the petitioner's share thereof accordingly. The returns of the

partnership were made on the accrual basis and the petitioner contends that the books of the partnership were kept on that basis and that he has properly computed his distributive share of the partnership income. It appears that there is no dispute as to the amounts or items of income, the issue being solely as to the basis on which the income of the partnership should be determined.

The evidence shows that the petitioner is a certified public accountant, familiar with the keeping of books of account and with both the accrual and cash receipts and disbursements methods of accounting. When the partnership was formed he determined that its books should be kept on the accrual basis and he made the returns for each year on that basis. While during that part of 1918 that the partnership was in existence there was no formal set of books, there were records and memoranda showing the partnership operations and income, and in 1919 a formal set of books was opened. Apparently these books were unskillfully kept during the years 1919 and 1920, and in 1920 a certified public accountant was employed to audit them and to prepare balance sheets. There was no intention on the part of the petitioner that the partnership books should be kept or the returns made on other than the accrual basis, and we can not see that the inexperience of incompetency of the bookkeeper can change the partnership to a cash basis. In our opinion the evidence shows that the partnership was on the accrual basis, that its books and other records reflect its income on that basis, and that the respondent is in error in computing the partnership income and the petitioner's distributive share thereof on the basis of cash receipts and disbursements.

The second issue involves the proper allocation of the amount of $16,666.62 drawn by the petitioner from the firm of Thompson & Black in the last six months of 1920, and the amount of $12,662.62 drawn by him from that firm in the last six months of 1922.

The petitioner kept his books of account and made his return of income on the calendar year basis. The partnership of Thompson & Worley was on the basis of a fiscal year ending June 30 of each year. The amount of $16,662.62 drawn by the petitioner in the last six months of 1920 was reported by him in his income-tax return for 1920 as salary from Thompson & Worley, but it was in fact a distribution to him of profits of Thompson & Worley earned in its fiscal year ended June 30, 1921. The amount of $12,662.62 drawn by the petitioner in the last six months of 1922 was reported by him in his return for 1922 as salary from Thompson & Worley, but it was in fact a distribution of the profits of Thompson & Worley for the fiscal year ended June 30, 1923. It appears that in his income-tax return for 1921 the petitioner included the distribution of $16,662.62 drawn by him in the last six months of that year from Thompson &

Worley, which represented a distribution of the profits of Thompson & Worley earned in its fiscal year ended June 30, 1922. The petitioner contends that the amounts drawn by him from the partnership in any fiscal year were income to him for the calendar year in which the fiscal year of the partnership ended. The respondent contends that the petitioner having drawn the amounts in question, and having reported them as salary from the partnership, they should be considered as salary and taxed to him as income in the calendar year in which they were actually received.

The situation presented is very similar to that found in *S. U. Tilton et al.*, 8 B. T. A. 914. In that case Tilton and one Keeler were members of the partnership of Tilton & Keeler. By agreement between the partners Keeler received 55 per cent and Tilton 45 per cent of the yearly net profits, after each was paid a fixed sum designated as salary for services rendered. The partnership kept its books and made its returns on the accrual method on the basis of a fiscal year ended June 30. Each partner kept his individual accounts and made his personal income-tax returns on the cash receipts and disbursements method on a calendar year basis. The Commissioner determined that the amounts drawn by Tilton and Keeler as salaries for services rendered to the partnership were either actually or constructively received by them during each month of the taxable year and constituted income to them when received. In holding that they were distributions of anticipated net distributive income and were income to the recipients at the close of the partnership's accounting period, this Board said:

> An agreement between partners to pay salaries from profits is nothing more than the determination of a basis for dividing such profits. A partner devoting his time and energies to the business of the firm is in fact working for himself and can not be considered as an employee of the firm in the sense that he is in the service of another. It follows, therefore, that he can not be paid a salary by the firm out of earnings in the sense of compensation for services rendered to an employer. In effect any allowances drawn by a partner from partnership assets are payments which he makes to himself and no man can be his own employer or employee. A partner receiving a salary is merely transferring money from one to another of his own pockets. *Leo Schwartz* v. *Commissioner*, 7 B. T. A. 223.
>
> It follows that whether or not a salary allowance to a partner, being merely a distribution of partnership assets, is taxable income to the recipient, can not be determined until the close of the partnership year for not until that time can it be known whether such payments were made from capital or profits. The salary is chargeable to the partner as income for his taxable year in which the partnership accounting period ends. To hold that a salary paid by a partnership to one of its members is income when received, regardless of whether such payment is made from capital or profits, may result in the taxation of capital. This Board has recognized this principle in *Appeal of J. H. Goadby Mills*, 3 B. T. A. 1245, in which case we said:

1198

\* \* \* In recognizing a partnership for accounting purposes, Congress realized that until the close of the partnership's accounting period it can not be determined whether or not the partnership has any net income. The earnings of the earlier month may be entirely eliminated by losses sustained in the closing months of the partnership's accounting period, even to the extent of showing a net loss for the entire accounting period. Under such circumstances, it could not be said that distributions during the first months of the partnership's accounting period constitute income to the partners when the operations of the entire accounting period show that the partnership sustained a loss.

In the instant proceeding the record discloses that Keeler received $40,000 and Tilton $20,000 on June 30 of the taxable year, and that the former also received 55 per cent and the latter 45 per cent of the distributive partnership income remaining after the payment of the amounts specified in the annual supplementary agreement providing for distribution to members of the firm on account of services rendered. That the agreed amounts paid or credited to Keeler and Tilton were designated as salaries is not material to the question to be decided. Regardless of what they were called, such amounts were received by the petitioners on June 30, 1919, and must be accounted for by them as income for the year ended December 31, 1919.

It is our opinion that the amounts drawn by the petitioner as salary from the partnership of Thompson & Worley in any fiscal year of the partnership should be taxed to the petitioner as income for the calendar year in which the fiscal year of the partnership ended.

The last question is whether collection of the amount of $31,205.51, which was assessed against the petitioner on his original return for 1919 and is unpaid, is barred by the statute of limitations. That we have jurisdiction of this issue is settled by *Peerless Woolen Mills*, 13 B. T. A. 1119.

The petitioner's return for 1919 was filed on March 15, 1920, and the tax of $62,622.06 due thereon appears to have been assessed in the year 1920. The five-year period for collection of the tax provided by the Revenue Acts of 1918, 1921, and 1924 expired on March 15, 1925. On October 10, 1925, the petitioner signed and filed a waiver of collection, but this waiver was never signed by the respondent. On November 26, 1926, and October 25, 1927, the petitioner and the respondent, the latter acting through a collector of internal revenue at New York, executed consents in writing to a later collection of the tax. The consents of November 26, 1926, and October 25, 1927, were not executed until subsequent to the effective date of the Revenue Act of 1926, and, unless the consent executed by the petitioner on October 10, 1925, operated to revive and extend the time within which collection of the tax could be made, the liability was extinguished by section 1106 of the Revenue Act of 1926, and the latter consents were of no effect. Therefore, we must first consider the waiver of October 10, 1925. In the case of *George U. Hind*, 18 B. T. A. 96, we were confronted with a situation identical

with the one we are now considering. In that case we held that a written instrument executed on February 25, 1926, by a taxpayer and not by the Commissioner, consenting to a later collection of tax which had been assessed prior to the effective date of the Revenue Act of 1924, was not a valid consent in writing as required by law and did not operate to extend the period for collection. We said:

The case of *Benjamin Russell* v. *United States, supra*, differs from the case at bar only in that prior to the enactment of the Revenue Act of 1926, the petitioner executed an instrument wh.ch purported to extend the time for collection to December 31, 1926, and our question is as to the effect of this instrument. In d.sposing of the question thus presented, it is pertinent to observe that the 1924 Act made no provision for an agreement in writing between the taxpayer and the Commissioner for a later collection of tax (*Sunshine Cloak & Suit Co.*, 10 B. T. A. 971), and that the provisions governing the collection of taxes assessed prior to the 1924 Act and while the 1921 Act was in effect would be those provided for by the latter Act (*Benjamin Russell* v. *United States, supra*). The 1921 Act, section 250 (d) provides, in so far as here pertinent, that taxes for 1917 "shall be determined and assessed within five years after the return was filed, unless *both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax*, and no suit or proceed.ng for the collection of any such taxes due under this Act or under prior income, excess-profits, or war-profits tax Acts, or of any taxes due under section 38 of such Act of August 5, 1909, shall be begun, after the expiration of five years after the date when such return was filed, \* \* \*." (Italics supplied.) Leaving out of consideration the sections dealing with false and fraudulent returns and other special situations, none of which are here applicable, it would follow that the collection of the deficiency involved in this proceeding is barred unless the instrument executed on February 25, 1926, satisfied the requirement for a later collection. We are of opinion that it does not meet the specific test laid down by the statute for the reason that it is only a consent in writing by the petitioner and not by the petitioner *and the Commissioner*. On its face it does not purport to be more than an instrument in which the petitioner would consent to a later collection without any signing or "writing" on the part of the Commissioner. And there is no evidence that there was a written request on the part of the Commissioner that the petitioner sign the instrument, but, on the contrary, the best recollection of the individual who signed for the petitioner was that a representative of the Commissioner called at his office, requested that the instrument be signed and later came to get it after the petitioner's signature was attached thereto. In our opinion, an instrument thus signed only by the taxpayer does not meet the requirements of the statute for a consent in writing between the taxpayer and the Commissioner, and the collection of the deficiency is accordingly barred. Cf. *Chadbourne & Moore*, 16 B. T. A. 961.

We hold that the consent executed by the petitioner on October 10, 1925, did not operate to extend the period within which collection of tax in question could be made, and that the period for collection having expired prior to the effective date of the Revenue Act of 1926, the liability was extinguished by section 1106 of that Act.

*Judgment will be entered under Rule 50.*