JOHN M. KING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41549. Promulgated October 11, 1932.

*John B. King, Esq.*, for the petitioner.
*John H. Pigg, Esq.*, and *R. B. Cannon, Esq.*, for the respondent.

## OPINION.

LOVE: We are asked to decide whether petitioner is taxable on the entire fee of $52,000, or on only one-half thereof. Petitioner contends that, under the community property laws of the State of Texas, the fee, when received, was community property belonging one-half to himself and one-half to the estate of his deceased wife, and that he was taxable only on his one-half. The respondent, however, argues that since the fee was conditioned upon the successful outcome of the lawsuit in question, and petitioner's wife having died before that condition was fulfilled, the fee can not be said to have been " acquired  *  *  *  during marriage " of petitioner and his wife, and was not, therefore, so impressed with the character of community property that one-half of the fee was taxable to the estate of petitioner's deceased wife instead of to petitioner.

In *Hopkins* v. *Bacon*, 282 U. S. 122, the Supreme Court decided that " the interest of a wife in community property in Texas is properly characterized as a present vested interest, equal and equivalent to that of her husband, and that one-half of the community income is therefore income of the wife." It further decided that " She and her husband are entitled to make separate returns, each of one-half of such income."

If petitioner's wife had lived, there can be no doubt but that each would have been permitted to have returned one-half of the $52,000 fee in separate income-tax returns. *Hopkins* v. *Bacon, supra.* Our

problem, then, is to determine what effect the death of petitioner's wife had upon the taxability of the fee which became fixed and was paid to petitioner after the death of his wife. Was the entire amount " income " to petitioner?

Sections 210 and 211 of the Revenue Act of 1926 imposes a normal and surtax, respectively, upon the " net income of every individual." These sections were construed and applied by the United States Supreme Court in *Poe* v. *Seaborn*, 282 U. S. 101, in which the court said in part:

The use of the word " of " denotes ownership. It would be a strained construction, which, in the absence of further definition by Congress, should impute a broader significance to the phrase.

The Commissioner concedes that the answer to the question involved in the cause must be found in the provisions of the law of the State, as to the wife's ownership of or interest in community property. What, then, is the law of Washington as to the ownership of community property and of community income including the earnings of the husband's and wife's labor?

The answer is found in the statutes of the State, and the decisions interpreting them.

If, then, under the laws of the State of Texas, the estate of Mary McAdoo King had a valid claim to one-half of the fee in question, such amount would not be the " income of " petitioner and would not be taxable to him. *Poe* v. *Seaborn*, *supra*. We, therefore, turn to the statutes and court decisions of the State of Texas relating to the ownership of property under conditions such as are present in the instant proceeding.

Article 4619 of Vernon's Annotated Revised Civil Statutes of the State of Texas defines community property as follows:

All property acquired by either husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; and during coverture may be disposed of by the husband only.

Article 2578 of the same statutes provides that, upon the dissolution of the marriage relation by death, the community estate, if there be a child or children of the deceased, shall pass one-half to the survivor and the other half to such child or children.

Petitioner and his deceased wife had one son, Leon, who was the only child and who survived his mother. Since the contract between petitioner and Baker which resulted in petitioner receiving the $52,000 fee was entered into prior to the death of petitioner's wife, it would appear that the contract itself was at least a part of the community estate, and a one-half interest therein would, under article 2578, *supra*, pass to the surviving child. But what did this one-half interest represent? The respondent contends that since the contract was for an indefinite amount of compensation conditioned upon the successful outcome of the suit then contemplated, and, further, since

this condition had not been performed prior to the death of petitioner's wife, the fruits of the contract can not be said to have been " acquired * * * during marriage," within the meaning of article 4619, *supra*, and, not being a part of the common property, no part thereof would constitute a part of decedent's estate.

The word " acquired " as used in article 4619, *supra*, " is not to be construed in any restricted sense, but must necessarily have that broad significance as will include all effects or gains or property of every kind coming to the husband or wife during coverture in any manner other than by ' gift, devise, or descent.' " *Lee* v. *Lee*, 112 Texas, 392; 247 S. W. 828. The court in the *Lee* case also quoted with approval from the Supreme Court of Arizona in *La Tourette* v. *La Tourette*, 15 Ariz. 200; 137 Pac. 426, as follows:

The law makes no distinction between the husband and wife in respect to the right each has in the community property. It gives the husband no higher or better title than it gives the wife. It recognizes a marital community wherein both are equal. Its policy plainly expressed is to give the wife in this marital community an equal dignity, and make her an equal factor in the matrimonial gains. It recognizes that property acquired during marriage by community funds or the labor and industry of either spouse * * * is the common property of the husband and wife. All that either the husband or wife or both may acquire during the existence of the marriage, other than is specifically excepted, is an acquest of the community, *and the presumption in all doubtful cases is strongly in favor of treating that which either spouse may own as community property.* It recognizes that the wife in her station is as much an agency in the acquisition as the husband, and is entitled to just as great an interest. [Italics supplied.]

In view of the liberal construction to be placed upon the word " acquired," can it be said that, since the right to the fee had its inception in the contract made with the receiver in 1920, the character of the fee is determined by the character of the right which produced it? Petitioner contends that in cases of inchoate rights it is the *time* of the *inception* of the *initial rights* that determines the status of property as between community and separate. In this connection, McKay, a recognized authority, in his book on Community Property, 2d ed., par. 520, says:

An inchoate title or pecuniary right is property in the sense of the law of separate and common property, just as truly as the most unimpeachable or perfect title. It takes its rank as separate or common property, for the same reason, and in response to the same tests, as the perfect or complete title or right. and it retains its character as separate or common so long as it can be traced; *its development from an inchoate to the absolute or complete form does not shift it from one fund to another; it may be relieved of conditions and burdens but this does not change its character; it may pass from a conditional to an unconditional form, without change or legal character; it may be exchanged for other things or rights, and its character as separate or common*

1164

*passes to whatever was acquired by the exchange.* If the property consists of an obligation, either contractual or delictual, it may be performed or enforced; and whatever is so acquired takes the same character as the obligation. [Italics supplied.]

At paragraph 533, the same author, in referring to property acquired in discharge of an obligation, says:

\* \* \* but the case is not so clear when the contract contains conditions which must be performed to preserve the contract right. In some of the cases it seems at first blush as though the final fruits of the contract are acquired by the performance of the conditions, but clearly this is not in accord with legal principle and is against the great weight of authority.

And, again, at paragraphs 535 and 536, the same author continues as follows:

PAR. 535. When a contract containing conditions is closed before marriage, and the conditions are performed during marriage by the community, some confusion has arisen in the authorities, due to the mistaken view taken by some courts that in such cases the property is acquired not through the separate ante-nuptial contract, but through the performance of the conditions during marriage. If the contract is largely executory and the conditions and stipulations of the contract are burdensome, and are performed by the community, it may seem to some like a legal nicety devoid of substantial justice to refer the origin of the property to the date of closing the contract through which it was acquired; but generally justice is better subserved by the rule now firmly established that property acquired by contract is deemed to have its origin as of the date of the contract.

And it is not difficult to find a justification for the rule: The contract itself is property, and having been acquired before marriage it is separate by force of the plain terms of the statute. If it should be sold without performance of the conditions clearly the proceeds of the sale would be separate, and if the conditions are performed after marriage through the expenditure of separate funds no one would insist that the property is common. The community may be reimbursed for its funds used to perform the conditions and when this is done even and exact justice is done to all; the separate estate obtains the advantages of its separate contract, or suffers the disadvantages of any, and the community is reimbursed for its outlay. If the circumstances impose no obligation to make reimbursement, this should not change the rule just stated.

PAR. 536. A condition precedent must be performed before title passes. A right to have property on performance of a condition precedent is not ownership of the property but a right to have ownership on performance of the condition. On the other hand, the holder of property under a title subject to a condition subsequent is the owner, though his ownership may be lost by breach of the condition. In the first case ownership is in the future; in the second in the present, but conditional. In either case the right is vested and protected by law, and is property in the sense of the law of separate and common property; in the first case it is the same as the right of one under a covenant to have property delivered to him in full ownership on performance of his contract; in the second case he is owner, but his ownership may be lost. In neither case is the character of the right changed from separate to common or vice versa, by a performance of the condition. *If the initial right is separate it*

*remains so even though the condition be performed by the community and if the initial right be common, a performance of the condition at the expense of the separate estate does not divert the property to it; the property remains common.* [Italics supplied.]

In *Jackson* v. *Jackson*, 258 S. W. 231, the Texas Court of Civil Appeals, among other things, said:

The character of the title to property with reference to being separate or community depends upon the existence or non-existence of the marriage at the time of the incipiency of the right by virtue of which title is finally vested, and when title is so vested it relates back to that time. *Creamer* v. *Briscoe*, 101 Tex. 490, 109 S. W. 911, 17 L. R. A. (N. S.) 154, 130 Am. St. Rep. 869; *Welder* v. *Lambert*, 91 Tex. 510, 44 S. W. 281.

In *Welder* v. *Lambert, supra*, one James Power and another, as empresarios, obtained a certain colonization contract with the State of Coahuila and Texas, by the terms of which, upon their compliance with certain conditions contained in the contract, they acquired the right to a grant of lands. Their right to the lands was contingent upon compliance by them with the conditions of their contract, they being not entitled, however, to any specific tract or tracts of land. The contract was entered into while Power was a single man. The conditions were complied with after his marriage. The question involved was whether the lands, which were acquired by him after his marriage as a result of his contract, were a part of the community or his separate estate. The point was raised and argued in the Supreme Court of the State of Texas that since the contract vested Power only with the potentiality of earning the land, and since this right was not fixed or earned prior to his marriage, that the property was community and not separate. The court held the land to be Power's separate property and at page 286 it said:

* * * In this cause the title originated in the contract of Power and Hewitson with the state of Coahuila and Texas. That contract, in the language of the Louisiana Court, was the " cause" of the title. Power was single when it was entered into, and the right to earn the lands acquired by it was his separate property. The title relates to its origin, and must take the impress of its character from it.

In *Creamer* v. *Briscoe, supra*, one Josiah Creamer and his first wife settled upon certain land to acquire it as a homestead under the laws then in force, and did everything necessary to that end, except to complete the three years of occupancy. After they had occupied the land for more than a year, Mrs. Creamer died, and Creamer, thereafter and during the three years, married a second time, and with his second wife completed the occupancy and obtained a patent. Creamer's second wife predeceased him and a contest arose as to

whether the homestead was community property of Creamer and his first wife or Creamer and his second wife. The Supreme Court of Texas, in reversing the lower court, held that the heirs of the second wife had no interest whatever in the property. We quote from the opinion as follows:

\* \* \* The original property right, having been "acquired" during the marriage, is community, and the title which completes that right relates back to its origin and takes character from it.

\*　　\*　　\*　　\*　　\*　　\*　　\*

It follows, from what we have said, that the character of the property in controversy had been fixed as belonging to the community estate of the first marriage, when Creamer last married, and that such character could not be affected by that marriage. The last wife merely came into the family and resided on the homestead in use, the title to which was no more changed thereby than if it had been Creamer's separate property.

It is our opinion that the statutes and court decisions of the State of Texas uphold petitioner's contention that since the right to the fee had its inception in the 1920 contract, which was entered into during the marriage of petitioner and his deceased wife, the fee when received was impressed with the character of community property and belonged one-half to petitioner and one-half to the estate of his deceased wife. The fact that the marital relationship was dissolved by death before the condition in the contract was fully performed does not affect the property interest in the fee when it was received, because, as we have pointed out above, it is the time of the inception of the initial right which determined the status of the property, and its development from an inchoate to an absolute right did not shift the fee from one fund to another. This is also in accord with the settlement which petitioner made with his son about the year 1927.

The deficiency for the year 1925 should be redetermined by excluding the amount of $26,000 from the net income determined by the respondent.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, STERNHAGEN, ARUNDELL, MURDOCK, and McMAHON dissent.