LIZZIE H. GLIDE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47630, 52685. Promulgated April 26, 1933.

*F. E. Youngman, Esq.*, for the petitioner.
*Homer Hendricks, Esq.*, filed brief as *amicus curiae.*
*H. A. Cox, Esq.*, for the respondent.

OPINION.

GOODRICH: In these proceedings, which were consolidated for hearing, petitioner attacks respondent's determinations of deficiencies in income tax for the years 1926 and 1927 in the amounts of $34,045.12 and $8,843.50, respectively.

The issues are: (1) Whether petitioner is entitled to deduct from her income as an allowance for depletion 27½ per centum of the amounts received as bonuses for leases of oil lands; (2) whether such bonus payments are taxable as capital gain under the provisions of section 208, Revenue Act of 1926; (3) whether petitioner may deduct from her income amounts paid by her as interest on bonds of a reclamation district.

As our findings of fact we adopt the stipulation of the parties upon which the case was submitted, together with the various exhibits attached thereto. For the purposes of this report only a brief statement is necessary concerning the facts.

Petitioner was the owner of certain lands situate within what is generally known as the Mt. Poso Oil Field in California. During the years 1925, 1926 and 1927 she granted to several individuals and corporations, various oil and gas leases embracing specified portions of her properties. In 1926 petitioner received $577,663 as bonus payments upon such leases, and $2,000 as consideration for extensions of time within which to comply with the drilling requirements of the leases, a total of $579,663, all of which she reported in her return. In 1927 petitioner received $120,000 as bonus payments upon leases and $28,405 as consideration for extensions of time within which to comply with drilling requirements, a total of $148,405, all of which she reported in her return. Upon her returns for each of these years she deducted as a depletion allowance 27½ per centum of the total amounts received as above stated. Respondent has disallowed these deductions and that action gives rise to the greater part of the deficiencies herein. During the years 1925, 1926 and 1927 there were no oil or gas wells upon the properties owned by petitioner and covered by the leases. In 1926 oil was discovered in commercial quantities on other properties within the Mt. Poso Field, the distance from petitioner's lands not being disclosed by the record.

Certain of petitioner's properties, leased by her for farming purposes, lay within the West Sacramento Reclamation District No. 900, which levied assessments which included interest on its bonds. Both in 1926 and 1927 petitioner paid $805.02 as an assessment to

pay such interest. These amounts respondent has denied as deductions from petitioner's income for those years.

At the onset we observe that the parties apparently make no distinction between the amounts received by petitioner as bonuses and amounts received as consideration for extensions of time within which to comply with the drilling requirements of the leases. We suggest that perhaps a distinction should be made. It may be that amounts received for granting extensions are in the nature of damages for breach of contract, arising under the lease as consideration for the forbearance of enforcement of the forfeiture provisions covering the lessee's failure to drill within a specified time, and are not to be included as " income from the property " in computing the allowance for depletion. If so, the amounts so received by petitioner, namely, $2,000 in 1926, and $28,405 in 1927, would be removed from the controversy respecting the depletion allowance. We raise the question, but do not decide it for it is unnecessary for us to do so in the view we take of the case.

There is no occasion for extended discussion concerning the nature of the bonus payments received by petitioner in connection with the leases granted upon her lands. Respondent concedes, as petitioner contends and as the decisions hold, that they constitute payment for oil in advance; are a lump sum or down payment of a part of the royalty; may be reduced by an allowance for depletion as are royalties; and are a part of the " net income from the property " as that term is used in the statute. *Work* v. *United States ex rel Mosier*, 261 U. S. 352; *Nelson Land & Oil Co.*, 3 B. T. A. 315; *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299; *Samuel Kraemer*, 25 B. T. A. 686; *Burnet* v. *Harmel*, 287 U. S. 103; *Darby-Lynde* v. *Alexander*, 51 Fed. (2d) 56; certiorari denied, 284 U. S. 666; *Palmer* v. *Bender*, 287 U. S. 551; *United States* v. *Dakota-Montana Oil Co.*, 288 U. S. 459; *United States* v. *Ludey*, 247 U.S. 295; *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301. But respondent does contend, and we agree with him, that where there is no production from the property there can be no depletion allowance in reduction of income from the property.

Minerals, including oil and gas, and, of course, other elements which need not here be mentioned, are wasting assets. By removal or production they are severed from the reserve body in which they are found and the removal reduces both the quantity and the total value of that reserve without opportunity for replacement. For that reason the Congress saw fit to provide for a depletion allowance as a deduction from the income derived from the removal and sale of the asset and, theoretically at least, the allowance will return to the owner his cost of the reserve by the time it is completely exhausted

through removals. That deduction is not a matter of right; authority for it must be found in the statute, and, beginning with the Revenue Act of 1913 and continuing through the subsequent revenue acts, provision has been made for some allowance for depletion in the case of operating mines and oil and gas wells. *Burnet* v. *Thompson Oil & Gas Co., supra; Darby-Lynde* v. *Alexander, supra.*

The Revenue Act of 1926 is controlling of the case at bar. Section 214 (a) (9) of that act provides for a deduction from income of a reasonable allowance for depletion, in the case of oil and gas *wells*, to be made under rules and regulations to be made by the Commissioner. Section 204 (c) (2) provides that " in the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property." It is to be noted that the statute uses the words " oil and gas wells," and that it makes no provision for an allowance for depletion of " income from the property," though it uses that phrase in fixing the measure of the gross income upon which the depletion allowance is to be computed.

Under this act the Commissioner issued Regulations 69, containing various instructions respecting the computation of depletion allowances and in particular Article 216, relating to adjustment for bonuses, which, in turn, was further explained in a ruling, I.T. 2384, VI–2 C. B. 22, reading in part as follows:

It will be noted that the above-quoted section of the law operates only in cases of oil and gas wells and that the allowance for depletion at the rate therein provided is expressly limited to the gross income from such property. Accordingly, it must be concluded that the application of article 216 (e) of Regulations 69 is dependent upon whether or not the lease in question is of an oil or gas well, and that article 216 (e) of the regulations does not apply to leases covering properties on which no well is in existence.

We uphold this interpretation as reasonable and correct. Strictly adhering to the clear wording of the statute, an existing well is a prerequisite to an allowance for depletion.

To stretch this unambiguous provision, as petitioner would have us do, to permit that allowance where there is no well on the property, but only a possibility or prospect that a well may be drilled in the future, would not only be contrary to the statute and to the Commissioner's ruling promulgated thereunder, but would circumvent the motivating principle and reason for such an allowance. Depletion is inseparably related to production; it denotes a consumption of the reserve by means of which income is realized, resulting in a corresponding diminution of the value of the remainder of the asset. Unless there is production, neither the quantity nor value of the recoverable asset is depleted and there is no occasion for an allowance therefor. The reserve is intact, and the owner needs no compensation for its waste, for he has not parted with it.

It is urged that the decisions above cited require that an allowance for depletion be made even where, as here, no well had been drilled on the property. With that we cannot agree. In each of those cases the properties were producing when the issues arose and the language of the several decisions indicates beyond doubt that the courts were fully cognizant of that fact. Consequently, the question whether bonus payments were subject to depletion allowance in the absence of wells upon the properties was not before the courts. Moreover, those cases (except *Dakota-Montana Oil Co.*) arose under acts prior to that here controlling, which provided for the computation of the depletion allowance upon a unit basis, necessitating an apportionment and adjustment of the depletion allowance between the bonuses and royalties. The 1926 Act provides for depletion, where allowable, at a flat rate and, in our opinion, that change, which made obsolete the Commissioner's regulations and rulings concerning the determination of the unit rate, requires a further consideration of the matter.

We are aware that the Commissioner recently has issued a ruling which would permit the reduction of a lease bonus by an allowance for depletion, even though there be no well on the property, where production is obtained within the same taxable year in which the bonus was paid, or where future production is practically assured because of nearby wells and geological indications. See G. C. M. 11384, January 16, 1933. We need not pass upon that ruling, for in the case at bar neither of those situations is presented. Here, no well was drilled within the taxable year and, while it is stipulated that oil was discovered within the Mt. Poso Field in 1926, we have no evidence as to the distance of the discovery from petitioner's properties, the uniformity of the field, or the exploitation plans of petitioner's lessees, from which we might determine the possibility of development upon her lands.

Concerning petitioner's claim that the bonus payments should be taxed as capital gain under the provisions of section 208 (a), Revenue Act of 1926, we need only point out that this contention is disposed of adversely to her by the decision of the Supreme Court in *Burnet v. Harmel, supra*.

Since respondent concedes that the last issue herein is controlled by our prior decisions in *Andrew Little*, 21 B. T. A. 911, and *Lee Wilson & Co.*, 25 B. T. A. 840, upon authority of those decisions we sustain petitioner's claim to a deduction of $805.02 paid in each of the taxable years before us.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

VAN FOSSAN, dissenting: I find it necessary to dissent from the decision of the majority. In considering the right of a taxpayer to depletion, I am unwilling to decide the question on any basis so highly technical and artificial as that employed in the prevailing opinion. Under the reasoning of the majority, the right to depletion depends on the existence of a well on the property. Obviously the production of the well, provided there be a well, need bear no relation to the amount of depletion. The law allows a flat percentage of income from the property (not from the well) as depletion. The Supreme Court has held that a bonus is income. Therefore, if the bonus be paid and there happens to be a well in existence (however inconsequential the production) the taxpayer gets full statutory depletion. If there be no well, regardless of other conditions, the taxpayer gets no depletion. But assume a case where, as frequently happens, a bonus is paid in one year and there is no well completed until the next year. The taxpayer would get no depletion on account of the bonus (or advance royalties, as the Supreme Court has called them) because there was no well on the property though all surrounding property bore productive wells, nor would he get depletion of the bonus in the next year even if a producing well be completed, because the bonus was not income in that year. Variations of this illustration, emphasizing the absurdities of the situation, could easily be multiplied.

I am unable to see any defensible basis for a distinction that would produce such an inequitable and illogical result. The prevailing opinion introduces a new concept into the theory of depletion and in many cases sets at naught the intention of Congress as interpreted by the decisions of the Supreme Court so far as depletion of bonuses is concerned. *Murphy Oil Co.* v. *Burnet,* 287 U. S. 299. The cited case clearly decides that a bonus is depletable and makes no suggestion that this right should be governed by such a rule as is laid down by the majority. The court clearly suggests the opposite:

A distinction between royalties and bonus, which would allow a depletion deduction on the former but tax the latter in full as income, when received, making no provision for *a reasonably anticipated production of oil* on the leased premises, would deny the " reasonable allowance for depletion " which the statute provides. * * * [Italics supplied.]

Moreover, I further find myself in disagreement with the majority opinion in the summary manner in which G. C. M. 11384 is disposed of. That the Commissioner is not now contending for such a rule as proposed by the majority is clear from this memorandum, which provides that depletion should be allowed if future production is practically assured because of nearby wells and geological indications. Whether this interpretation is too narrow it is not

necessary to discuss, but certainly it is broad enough to cover the instant case. The facts show that oil was being produced in the same township and in the same oil field. This brings the petitioner squarely within the first of the four situations referred to in the memorandum. The prevailing opinion dismisses the matter on the basis of failure of proof.

In my opinion the majority of the Board throughout this opinion have grasped at a shadow of diction and allowed the substance of the thought and intention of Congress and the Supreme Court to escape them.

LANSDON and LEECH agree with this dissent.