AUBREY UMSTED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AUDREY UMSTED WILKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDNA UMSTED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GRESSIE UMSTED CARNES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 46471-46474. Promulgated May 24, 1933.

*Edward L. Wright, Esq.*, for the petitioners.
*R. W. Wilson, Esq.*, for the respondent.

OPINION.

LANSDON: The respondent has asserted deficiencies against each petitioner as follows:

| Name | Deficiency | |
|---|---|---|
| | 1925 | 1926 |
| Aubrey Umsted | $277.81 | $3,167.11 |
| Audrey Umsted Wilkins | 277.81 | 3,167.11 |
| Edna Umsted | 1,137.26 | 6,883.77 |
| Gressie Umsted Carnes | 277.81 | 3,194.08 |

All of the issues raised by the pleadings have been settled by stipulation except the following: (1) Whether income from certain property, which was impounded by a court pending the outcome of litigation over title, is taxable when received by the court receiver or upon termination of the litigation; (2) whether amounts paid by a landowner to attorneys for services rendered in a suit against an adverse claimant are a deductible expense; (3) whether a certain written instrument is a lease or a contract of sale; and (4) whether a bonus received for the execution of an oil and gas lease is subject to depletion.

From the stipulated facts, which we adopt by reference as our findings of fact, it appears that Sid Umsted died intestate on November 3, 1925, leaving a widow and three daughters, who are the petitioners here. * Prior to November 21, 1924, certain land to which he claimed title became involved in litigation and pending the outcome thereof the property was impounded by the court and placed in the hands of a receiver. On November 21, 1924, the receiver leased the property for oil and gas and collected a bonus of $30,000. On December 21, 1925, the Supreme Court of Arkansas held that Sid Umsted owned the property, including mineral rights, and that he was entitled to the bonus collected by the receiver. On January 7, 1926, the receiver paid $30,000 to Umsted's attorneys, who, after deducting $10,000 for their services, paid the balance of $20,000 to his estate. Such payment was distributed to Umsted's heirs, each receiving the pro rata part to which she was entitled under the laws of Arkansas.

In computing income of the estate for the period November 3, to December 31, 1925, the respondent has included the amount of $20,000. By amendment to his answer at the hearing he alleges that the total of $30,000 should be included as income and moves to increase the deficiency accordingly. The petitioners contend that no part of the $30,000 was income to the estate. In the alternative they contend that only $20,000 should be included as distributable income of the estate of Sid Umsted and that a proper allowance for depletion should be made if the Board includes any amount as income. Only the amount distributed to the petitioners as heirs of the estate should be included in their taxable income. *Margaret B. Sparrow et al., Trustees*, 18 B.T.A. 1; and *Florence Grandin*, 16 B.T.A. 515.

Since the petitioner has offered no evidence that there was any production of oil or gas on the property at the date the lease was executed or any reason for anticipating such production in the near future, there is no basis for allowing a depletion deduction in respect of the bonus received. *Murphy Oil Co.* v. *Burnet*, 287 U.S. 299.

On February 28, 1926, the beneficiaries of the estate of Sid Umsted executed an instrument whereby they leased a certain oil-producing property to the Woodley Petroleum Co. in consideration of $50,000 in cash and one eighth of the oil produced and under the terms thereof received cash in the amount of $55,707.53 in the same year. The petitioners contend that such instrument evidenced a sale and that the price received is less than the basis for computing profit therefrom. The respondent has determined that there was a sale of property resulting in a taxable gain of $2,161.30. By amendment to his answer at the hearing he now alleges, however, that the prop-

erty was leased by petitioners in consideration of a bonus of $50,000 and one eighth of the oil. He moves to increase the deficiencies accordingly.

The instrument in controversy, which is included in the record as an exhibit, is clearly a lease of land for oil and gas purposes in the usual form. The amount of bonus and royalties received in the taxable year should be included in income. Deductions for depletion should be allowed in respect of the bonus and royalties in the amounts stipulated by the parties. *Murphy Oil Co. v. Burnet, supra.*

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

GOODRICH, concurring: While I am in accord with the result reached in these proceedings, for the reasons more fully stated in *Lizzie Glide,* 27 B.T.A. 1264, I disagree with the opinion in so far as it intimates that an allowance for depletion might have been deducted had evidence been presented showing that production in the near future was reasonably anticipated. The instant proceedings, like the *Glide* case, are controlled by the Revenue Act of 1926, which substitutes for the " reasonable allowance for depletion " to be determined under the Commissioner's regulations, which was the subject of consideration by the Supreme Court in *Murphy Oil Co. v. Burnet,* 287 U.S. 299, a depletion allowance at the flat rate of 27½ per centum of income from the property. It is no longer necessary to determine what, upon a unit basis, may be a reasonable allowance. The statute allows the flat rate, reasonable or not. If it be true, as we held in the *Glide* case, that depletion is inseparably related to production, that unless there is a well, there can be no allowance for depletion, then it is immaterial that at the time the bonuses were received subsequent production was anticipated. Unless production is obtained within the same taxable period in which the bonuses are received, they can not be offset by the deduction of an allowance for depletion. In my opinion, the plain wording of the statute can not be stretched to permit an allowance for depletion in the absence of an existing well, nor should a similar effort be made with respect to the language used by the court in determining a case arising upon a different set of facts and under different statutory provisions. Doubtless, inequities may arise under this strict rule. It may be that in some cases bonuses may be received which must be treated as income and which can not be reduced by an allowance for depletion because no production was obtained within that year. The task of supplying a remedy for such harsh results lies with the Congress, not with this Board and the courts.