J. T. Sneed, Jr., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 45694. Promulgated June 29, 1934.

1122

*Harry C. Weeks, Esq., Charles F. Keffer, Esq.,* and *Walter G. Russell, Esq.,* for the petitioner.

*Frank B. Schlosser, Esq.,* and *R. B. Cannon, Esq.,* for the respondent.

## OPINION.

GOODRICH: It is admitted that under the Texas statutes [1] the lands purchased by petitioner prior to his marriage, his interest in the partnership lands which he owned prior to marriage, and the lands representing his interest in his father's estate were his separate property. It is clear also, and respondent inferentially admits it, that the lands purchased by petitioner subsequent to his marriage are community property. Since the record (Exhibits 1 and 2) discloses the source and date of acquisition of all the tracts under lease (and we are here concerned only with the leased lands), the classification of the lands, the income arising therefrom, and the allocation of the expenses are a simple matter, except for the property representing the interest purchased from J. B. Sneed. The time of that purchase is in controversy. Respondent determined and maintains

[1] Texas Civil Statutes (1914), arts. 4621, 4622; Texas Civil Statutes (Revision 1925), arts. 4613, 4614, 4619.

that it was effected prior to petitioner's marriage; petitioner contends it was effected thereafter.

We are of opinion that the interest was not purchased by petitioner until subsequent to his marriage and therefore that the lands were community property. True, ostensibly this interest was conveyed to petitioner by deed of June 7, 1913, which was a short time prior to his marriage (June 30, 1913) and was claimed by him in the partition proceedings as a part of his share of his father's estate. If petitioner's ownership in the property had its inception when the deed was executed, the lands conveyed became and thereafter remained his separate property, for the Texas rule is that the date of inception of ownership fixes the status of the property.[2] Petitioner does not question that rule, but contends that under the facts in this case his ownership did not have its inception in the passing of the deed before his marriage, but in the payment of the money thereafter. With that we agree.

The testimony is uncontradicted and convincing that the transfer of the legal title to petitioner was for the accommodation of the transferor; that the purpose was to enable petitioner to raise money by a loan, secured by him upon these lands, with which to enable J. B. Sneed to discharge the indebtedness upon which petitioner and other relatives were secondarily liable. It was with that understanding between the brothers that petitioner claimed the interest in the partition suit. As we view it, this is not a case where a bona fide conveyance is made effecting a completed sale, with payment of the consideration deferred. Petitioner was not obligated to buy the land, nor was it to be his until he paid for it. He had no option to buy, for J. B. Sneed was free, until petitioner should pay him the agreed price, to sell to any purchaser he could find. As between the parties the conveyance was not final, but conditional, and petitioner held only as trustee for security and convenience. We doubt whether the conveyance under such circumstances could have withstood an attack by creditors or other interested parties, and it is well settled that property conveyed upon trust, in which neither husband nor wife has any beneficial interest, is not community property.[3]

We conclude that no sale of the J. B. Sneed interest to petitioner was accomplished until after petitioner's marriage, when he obtained a loan and paid for the interest of his brother in the father's

[2] See Speer's Law of Marital Rights in Texas, 3d ed., p. 1051; note from 17 L.R.A. U.S.) 154 appended to decision in *Creamer* v. *Briscoe,* 101 Tex. 490 (109 S.W. 911). See also for discussion of applicable principles, *John M. King,* 26 B.T.A. 1158; affd. 69 Fed. (2d) 639.

[3] See Speer, Law of Marital Rights in Texas, ¶ 357, p. 438; *Crenshaw* v. *Harris,* 41 S.W. 391.

estate. The lands received by petitioner upon partition of that estate, totaling 55,847 acres, represented nine-fourteenths of the total acreage owned by the partnership; seven-fourteenths being petitioner's interest as a partner, one-fourteenth being his interest as an heir, and one-fourteenth being the interest he purchased from his brother (although the deed recited the brother's interest as one-seventh of the whole of the partnership lands). The lands representing the purchased interest in the estate should be classified as community property.

We come, then, to a consideration of the controversy respecting the classification, for purposes of the tax, of the income arising from the property under the leases—the delay rentals and bonuses. Petitioner vigorously contends that these revenues are community income and should be so taxed, no matter whether the leases embraced separate or community lands. As to the bonuses, this contention heretofore has been resolved against him, for it has been determined that cash considerations paid for the execution of leases upon separate property are the separate income of the owner of the property. *James R. Parkey*, 16 B.T.A. 441; *John O'Neil*, 16 B.T.A. 614; *W. P. Ferguson*, 20 B.T.A. 130; affirmed as to this issue, 45 Fed. (2d) 573; *Oscar Chesson*, 22 B.T.A. 818 (petition for review denied, 57 Fed. (2d) 141); *E. Michna*, 24 B.T.A. 715. We are not persuaded to a deviation from this rule of decision by petitioner's argument that the character of the bonus income was changed by reason of the fact that much of his time and attention was given to the negotiation of the leases (the majority of which were consummated through brokers). See *No. 1 Oil Corp.* v. *Bass*, 283 U.S. 279; *Rose* v. *Houston*, 11 Tex. 324; *Arnold* v. *Leonard*, 114 Tex. 535; *Stephens* v. *Stephens*, 292 S.W. 291. The bonuses received should be taxed as separate or community income in accordance with the classification of the properties under lease, covered by the various leases as shown by Exhibits 1 and 2, upon which the bonuses were paid. This allocation may be made upon settlement of the case. But it is held also that no distinction exists between delay rentals arising under leases and ordinary rentals of farm lands, and that the latter are income of the marital community, notwithstanding that the lands from which they arise may be the separate property of either spouse. G.C.M. 11197, C.B. XII–1, p. 238; *John O'Neil, supra*, citing *Willcutt* v. *Willcutt*, 278 S.W. 236; *Caruthers* v. *Leonard*, 254 S.W. 779. Therefore, the delay rentals received during 1925 and 1926 should be taxed as community income.

Petitioner's claim for the deduction from income of an allowance for depletion of 27½ percent of the income from the properties

(delay rentals and bonuses) is also controlled by prior decision. In *Lizzie H. Glide*, 27 B.T.A. 1264 (on review C.C.A., 9th Cir.), we held that depletion is inseparably related to production; that unless there is production, no depletion of reserve is in fact sustained, and no allowance therefor may be made. Here there was no production from any of the leased properties during the years before us. There was a well upon one lease it is true, but it was shut in and no gas was removed. A closed well does not produce; it does not exhaust the reserve; its mere existence does not set up production inseparable from depletion, nor serve to exempt the case at bar from application of the effect of the *Glide* case.

But this case goes further on its facts. Without a detailed recital of the evidence, we have found as a fact that petitioner's lands in 1925 were regarded as proven oil or gas territory. The testimony of a qualified geologist, familiar with petitioner's lands and the field in which they are situate, the charts introduced showing existing wells in adjacent territory, and the fact that gas was found on petitioner's lands convince us that future production from wells which might be drilled on those lands was practically assured in 1925. That finding brings the case squarely within one of the situations described by respondent in G.C.M. 11384, C.B. XII–1, p. 64, in which he would permit the deduction of an allowance for depletion from income received as bonuses on leases, his description being as follows: "(1) No oil being produced when the bonus was received, but future production practically assured because of near-by wells and geological indications."

We decline to follow this view, and therefore disapprove the above quoted portion of respondent's ruling.

If we are correct in holding that without production there is no depletion (which, in fact, cannot be denied) and that without actual depletion there may be no allowance therefor, the probability of production from a property in the future is immaterial. Unless that production is obtained within the same taxable period in which the bonus is received, the latter must be carried into income unreduced by an allowance for depletion. We are fully cognizant of the possibility, which petitioner on brief points out, that cash considerations received in connection with the granting of leases in one year perhaps may never be reduced by a depletion allowance because production was not obtained until a later taxable period. If that situation is to be corrected, the task is for the Congress, not for respondent, nor for this Board or the courts to attempt by a straining of the plain provisions of the statute. See *Aubrey Umsted*, 28 B.T.A. 176. We conclude that petitioner may not deduct any allow-

ance for depletion in either 1925 or 1926. This result is amply supported by the decision of the Circuit Court of Appeals for the Fifth Circuit in *Herring* v. *Commissioner*, 70 Fed. (2d) 785, which affirmed our memorandum decisions in Dockets 47041 and 47042 (June 29, 1933), wherein we followed the *Glide* case, *supra.*

The remaining issue relates to the validity of the consent upon which respondent apparently relied in issuing his notice of the deficiency for 1925 after the time within which, without an extension by mutual consent in writing, the assessment thereof would be barred by statute. Petitioner contends that there is no consent; that the qualified consent which he submitted was rejected by respondent.

We agree with him. The rejection of petitioner's modified consent by the revenue agent in charge, who represented and acted for respondent, was definite and unequivocal. There is no evidence before us to indicate that respondent, within the statutory period, disapproved of his agent's refusal of the offered consent or took any action evidencing a reconsideration of the refusal and a consequent acceptance of and reliance upon the consent. Nor does the record show that petitioner asked for or received any benefits by reason of his offer to agree to a waiver of the statutory period. On the contrary, his refusal to comply with respondent's demand to submit a second consent in form acceptable to respondent shows clearly that petitioner was willing that respondent proceed at once to a final determination of deficiency in the case, and to the assessment thereof unless stayed by petition to the Board, within the period allowed by law. Therefore, the consent form signed and offered by petitioner and rejected by respondent was of no effect, and prior to the expiration of the statutory period there was no agreement in writing between the parties for an extension of that period. See *American Railways Co.*, 30 B.T.A. 939.

Moreover, even had respondent's rejection of the offered consent been less definite, there would still be no agreement in form prescribed by statute, for respondent has failed to sign the consent in evidence of his agreement thereto. We understand the rule to be that a consent is ineffective unless signed by or on behalf of the Commissioner, *Chadbourne & Moore*, 16 B.T.A. 961; *Melville W. Thompson*, 18 B.T.A. 1192; *Corn Products Refining Co.*, 22 B.T.A. 605; *Atlantic Mills, etc.* v. *United States*, 3 Fed. Supp. 699; *U. S. Refractories Corp.*, 23 B.T.A. 872; affd., 64 Fed. (2d) 69; 290 U.S. 591; (*contra, Commissioner* v. *Hind*, 52 Fed. (2d) 1075; reversing 18 B.T.A. 96; *Parker* v. *Commissioner*, 49 Fed. (2d) 254)—unless the Commissioner's written approval of the consent appears elsewhere

or can be reasonably inferred. *Stearns Co.* v. *United States*, 291 U.S. 54.

Here, the consent is not signed by or for respondent, and his only writing which could possibly record his approval or from which his approval could possibly be inferred, is the deficiency notice issued on July 18, 1929, after the statutory period had expired. Consequently, it cannot be said that before the period expired the parties had consented in writing to an extension of the time. Nor can it be said that both consented in writing *after* the time prescribed as permitted by section 278 (c), 1924 Act, for petitioner submitted no consent except that of January 5, 1929. Respondent's notice of a deficiency for the year 1925 came too late.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

ARUNDELL, dissenting: For the reasons so ably set forth by Judge Sibley in *Herring* v. *Commissioner*, 70 Fed. (2d) 785, I disagree with the majority opinion in this case in disallowing depletion to taxpayer. Under the practice of the Bureau of Internal Revenue and the decisions of the Board, depletion allowances are treated as more intimately connected with income from the property than with actual production. That is, it has not been thought necessary to have both production and income in the same year in order for depletion deductions to be allowable. See *Clearfield Lumber Co.*, 3 B.T.A. 1282; *R. M. Waggoner*, 5 B.T.A. 1191; *Inspiration Consolidated Copper Co.*, 11 B.T.A. 1425; A.R.M. 12, C.B. 2, p. 144. While the rule of those cases perhaps should not be extended to situations where there is no production within a reasonable time after payment of a bonus, the Commissioner has interpreted the statute to apply to cases where production is practically assured. G.C.M. 11384, C.B. XII-1, p. 64. This ruling, promulgated after *Murphy Oil Co.* v. *Burnet*, 287 U.S. 299, is designed to give the reasonable allowance required by the statute. The facts in this case show that production was practically assured, and it also appears in the record, though not found as a fact, that fifteen or twenty wells have since been drilled, all producing or capable of production. I think the Commissioner's ruling to be sound, and as it concededly applies to this case it is error to deny deductions for depletion against the bonuses.

LEECH agrees with this dissent.